## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANGELA L. COOK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:17-cv-01654-RDP** |
| | } | |
| **CITY OF BIRMINGHAM,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

## <u>MEMORANDUM OPINION</u>

This is an employment discrimination case in which Plaintiff Angela Cook claims that

Defendant City of Birmingham discriminated against her because of her race (African-American)

and gender (female), and retaliated against her in violation of Title VII of the Civil Rights Act of

1964, as amended, and 42 U.S.C. § 1981.[1] (Doc. # 8). Specifically, Plaintiff claims that Defendant

(1) failed to reimburse her for attending training in or around August 2016; (2) failed to compensate

her for being a "training coordinator" for the months of November 2016 and December 2016; (3)

treated a similarly situated Caucasian male, George Joiner, more favorably by allowing him to

transfer to the day shift and giving him weekends and holidays off, but denying Plaintiff that same

opportunity; and (4) decreased her overtime hours. (Doc. # 8 at 3-4, ¶¶ 19-24).[2] Plaintiff also

---

[1] The court acknowledges that Plaintiff's Amended Complaint is unartfully drafted. Plaintiff's § 1981 claim should be brought under 42 U.S.C. § 1983—the proper statute to assert claims against a state. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983."). Notwithstanding, the court concludes that Plaintiff's references to § 1983 throughout the Amended Complaint is sufficient to sustain her claims.

[2] Throughout this Opinion, the court cites to the court-filed page numbers, not the page numbers found on the actual documents.

claims that Defendant retaliated against her after she complained to Lieutenant David Marable (Plaintiff's supervisor) about her shift assignment by denying her transfer to the day shift, denying her holidays and weekends off, and reducing her overtime hours. (Doc. # 8 at 14, ¶ 99; Doc. # 31-1 at 3, ¶ 7).

Defendant filed its Motion for Summary Judgment on August 2, 2019. (Doc. # 27). The Motion has been fully briefed (*see* Doc. # 28, 31) and is ripe for review. After careful review, and for the reasons explained below, Defendant's Motion is due to be granted.

## I.     Factual Background[3]

In April 1995, Plaintiff began her employment with Defendant. (Doc. # 31-1 at 1, ¶ 2). Plaintiff was (and currently is) employed as a Public Safety Dispatcher III ("PSD III"). (*Id.*). PSD IIIs work within the Birmingham Police Communications Center and report directly to the Sergeant in their unit. (Doc. # 29 at 4, 18, 26). At all relevant times, Plaintiff's supervisors were Lieutenant Marable, an African-American male, and Sergeant Curtis Coleman, an African-American male. (Doc. # 29 at 4-5).

Much of the factual background below is found within a report authored by Internal Affairs Sergeant Katrina Johnson in April 2017, after Plaintiff filed her EEOC Charge. (*See* Doc. # 29 at 13-27).

### A.  Facts Relating to Plaintiff's Title VII Discrimination Claims

#### 1.  Reimbursement for Training

In April 2016, Plaintiff submitted a request for leave to attend an APCO Training

---

[3] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Conference in Orlando, Florida. (Doc. # 29 at 5, 15). However, Plaintiff had already been slated and approved to attend the NINA Training Conference in Indianapolis, Indiana. (*Id.* at 24). Plaintiff submitted her request for the APCO Conference to Gregory Silas (the 911 Director for the Birmingham Emergency District) after speaking to Lieutenant Demarcus Miller (her supervisor before Lieutenant Marable). Lieutenant Miller verbally gave Plaintiff permission "several months before the training occurred." (*Id.* at 20).

Plaintiff's request to attend the training conference fell during the same time she had "put in for vacation," although she states she did not realize that at the time. (*Id.* at 16). When Lieutenant Marable asked Plaintiff how she was going to attend the training, she told him "she was using her vacation." (*Id.*). Sergeant Coleman also believed Plaintiff was using her vacation time for the training class and paying her own travel expenses. (*Id.* at 19). Silas reported that "at the time [Plaintiff] left for the training, she was aware that she would be paying for the training herself and she would have to take vacation to do so." (*Id.* at 21). Nonetheless, as a result of her discussions with Silas, a reimbursement check was printed for Plaintiff.[4] (*Id.* at 23). According to Silas, while his signature on a training request "signifies that the funds are available for the person to attend the training," his signature does not "approve who goes to the training." (*Id.* at 20).

Lieutenant Marable denied Plaintiff reimbursement for the training because Plaintiff did not submit her request to the proper authorities because Silas is not in Plaintiff's command structure.[5] (*Id.* at 5). Plaintiff received a "counseling" for "manipulat[ing] the system" and

---

[4] Lieutenant Miller stated that he did not approve Plaintiff's request to have her travel and training reimbursed. (Doc. # 29 at 18). He further stated that although he did not complete a memo approving Plaintiff's request (which he would need to do in the event a request was approved), Silas likely completed the finance portion of the request, which is why a check was printed for Plaintiff. (*Id.*).

[5] Deputy Chief Williams supported this decision, stating: "[Plaintiff] did not go through the proper channels to request for the APCO Training. . . . [E]veryone who attended the training had the proper paperwork except [Plaintiff]. [Plaintiff] went to Mr. Silas without approval from the Lieutenant and the chain of command." (Doc. # 29 at 25).

"circumventing the chain of command" by taking "an expense report to [Silas] without [Marable's] signature, without [] Miller's signature or anyone's signature but hers and [] Silas' signature." (*Id.* at 24).

### 2. Compensation for Duties of "Training Coordinator"

Plaintiff asserts that for the months of November and December 2016, she was not compensated for performing the duties of "Training Coordinator." Lieutenant Marable found out that certain Communications Center employees "were inputting a half an hour each day whether they were training someone or not into TeleStaff [the time system]." (Doc. # 29 at 24). Lieutenant Marable believed the PSD IIIs were trying to be compared to "the sworn personnel's Field Training Officers[, which] receive a 5% increase for assuming extra duties of training others, which is not a part of a Police Officer's job duties. The job duties of a PSD III include training PSD IIs and PSD Is, as well as other supervisory duties." (Doc. # 29 at 6). According to Deputy Chief Irene Williams:

> [T]he PSD III positions were approved by the Personnel Board and they became supervisors for the PSD I and PSD IIs. . . . [I] found out about the training increase [the PSD IIIs] were giving themselves by Ms. Peggy Polk [the payroll coordinator and then-director of Human Resources] and it was stopped because they could not do that. . . . They were already getting their pay increase from being supervisors and they could not get any type of training pay. Training is a part of their duties as a supervisor and Training Officer Status is only provided for sworn officers.

(Doc. # 29 at 25). Soon after Lieutenant Marable discovered this practice, it was stopped. (*Id.* at 24). Plaintiff was not the only employee who was affected by this change. (*Id.* at 6).

### 3. Plaintiff's Transfer Request and Her Comparator Evidence

PSD IIIs work in shifts. Each shift, except for the day shift, has two PSD IIIs on duty. The day shift, however, has only one PSD III on duty because a Sergeant is also on duty. (Doc. # 29 at

18). Day shift PSD IIIs and Sergeants have off days on Saturday and Sunday. Plaintiff has Sunday and Monday as her off days. (*Id.*).

Plaintiff spoke to Lieutenant Marable about "revamping the off days for the supervisors." (*Id.* at 16). Her request was denied. (*Id.*). Plaintiff also requested -- based on her seniority -- to transfer to the day shift and to have weekends and holidays off. (Doc. # 29 at 24; Doc. # 31-1 at 3, ¶¶ 4-5). George Joiner (rather than Plaintiff) was transferred to the day shift.[6]

Joiner was also employed as a PSD III. In 2016, Joiner filed a Family Medical Leave Act ("FMLA") request. (Doc. # 29 at 6). Joiner requested to work the day shift (7:00 a.m. to 3:00 p.m.) due to his battle with a terminal illness and "the need to attend [d]octor's visits during the day." (*Id.* at 7). Joiner's request was approved[7] as an accommodation by Human Resources, and he was granted "continuous FMLA from September 29, 2016 to October 18, 2016, and [he was] approved for Intermittent FMLA beginning October 19, 2016. (Doc. # 29 at 11). Joiner began working the day shift on October 25, 2016. (Doc. # 29 at 7). On October 24, 2016, Plaintiff "was notified that [she] was being involuntarily assigned to take Joiner's place on the morning shift (10:00 p.m. – 6:30 a.m.) with Joiner's off days (Sun-Mon)." (Doc. # 31-1 at 3, ¶ 5).

In February 2017, Joiner took a leave of absence. (Doc. # 29 at 7). He did not return to work, and he passed away in August 2017. (*Id.*).

### 4. Overtime Hours

PSD IIIs are able to work overtime hours. (Doc. # 29 at 19, 25). "[T]he Sergeant puts out

---

[6] The record suggests that only one PSD III could work a day shift at a time because the day shift had a Sergeant on duty.

[7] Sergeant Coleman stated that "he and [Lieutenant] Marable made the decision [to place Joiner on day shift] based on his medical condition and if [Joiner] didn't show up for his shift, they knew [one of them] would be there to cover the shift." (Doc. # 29 at 19). Joiner also could not satisfactorily perform his supervisory duties. This necessitated placing Joiner on the day shift so someone could be there with him. (*Id.*).

a list by email and [the PSD IIIs] respond to the email" by selecting the day(s) the employee wishes to work.[8] (*Id.*). Plaintiff claims that she consistently worked 16-20 hours of overtime a week.[9] (Doc. # 31-1 at 3, ¶ 7).

Subsequently, Plaintiff complained to Lieutenant Marable regarding Joiner's transfer to the day shift and the denial of her transfer request. (*Id.* ¶¶ 6-7). Plaintiff asserts that after she complained, her overtime hours were "substantially reduced," and "the majority of her overtime hours were divided between Vicki Young and Carol Bryant." (*Id.* ¶ 7). However, according to Lieutenant Marable, Plaintiff "has never been denied [the opportunity] to work overtime on the weekends," and she "has received overtime opportunities." (Doc. # 29 at 7, 25). Defendant's overtime hours log indicates that from January 1, 2016 to August 2, 2019, Plaintiff worked a total of 1,604.55 hours of overtime—the fifth most out of the 13 employees listed on the sheet.[10] (Doc. # 29 at 31).

### B. Facts Related to Plaintiff's Claim of Retaliation

In addition to complaining to Lieutenant Marable about Joiner's transfer, Plaintiff also told Lieutenant Marable that she believed the denial was due to race and gender discrimination. (Doc. # 31-1 at 3, ¶ 6). After making her complaints, Plaintiff claims that her overtime hours were "drastically decreased while others' overtime hours remained the same or were increased." (*Id.* ¶

---

[8] Shanta Bolden, a PSD III, stated that she "felt the overtime was not distributed fairly because every time she received the list, most of the dates were already taken. (Doc. # 29 at 22). However, there is no record evidence indicating when she actually looked at the distribution sheet or even when she wanted to work overtime. In fact, Vicki Young, a PSD III, stated that "there have been incidents when Ms. Bolden and [Plaintiff] have signed up to work and did not work." (Doc. # 29 at 23).

[9] It is also evident in the Rule 56 record that Plaintiff believed the overtime distribution was "unfair" from September to November 2016, because "[o]ther shifts were given first choice and by the time the morning shift received the list most of the days were taken." (Doc. # 29 at 17).

[10] It is also evident that within that same broad time frame, Plaintiff worked significantly more overtime hours than Carol Bryant (who only worked 920.71 hours). (Doc. # 29 at 31).

94). Lieutenant Marable does not recall Plaintiff's complaints about the transfer denial and asserts that Plaintiff did not request the transfer until after Joiner had been transferred. (Doc. # 29 at 7, 25).

On February 2, 2017, Plaintiff filed her Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination. (Doc. # 8-1 at 2). She filed her Complaint in this action on September 29, 2017. (Doc. # 1). On November 2, 2017, Plaintiff filed an Amended Complaint. (Doc. # 8). Her Amended Complaint alleges race discrimination (Count One), gender discrimination (Count Two), and retaliation (Count Three). (Doc. # 8 at 4, 8, 12).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

The court begins its analysis by reviewing Defendant's Motion for Summary Judgment on Plaintiff's claims of race discrimination (Count One) and gender discrimination (Count Two).[11] The court will then address Plaintiff's claim of retaliation (Count Three). After careful review, the court concludes that Defendant's Motion for Summary Judgment is due to be granted.

### A.  Plaintiff's Race and Gender Discrimination Claims

The court notes that although Plaintiff's Amended Complaint contains only one race discrimination count and one gender discrimination count, those counts contain multiple claims for relief. (Doc. # 8 at 10-14). Under those two counts, Plaintiff argues that Defendant discriminated against her in four ways: (1) failing to reimburse her for expenses related to training in or around August 2016; (2) failing to compensate Plaintiff for being a "training coordinator" for the months of November 2016 and December 2016; (3) treating a similarly situated Caucasian male, George Joiner, more favorably by allowing him to transfer to the day shift and giving him weekends and holidays off but denying Plaintiff such opportunity; and (4) decreasing her overtime hours. Although the Amended Complaint is a shotgun pleading, *see Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (where a plaintiff asserts multiple claims for relief, each claim for relief should be pled in a separate count, as required by

---

[11] Title VII racial disparate treatment claims and § 1981 race discrimination claims are evaluated using the same analytical framework. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

Rule 10(b)), the court will nonetheless analyze each type of claimed discrimination.

Absent direct evidence of racial or gender discrimination (and, here, there is no direct evidence in the Rule 56 record), Title VII and Section 1981 disparate treatment claims are evaluated according to the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Although the *prima facie* elements are flexible to accommodate the presentation of different types of claims in different contexts, generally a Title VII plaintiff may satisfy her initial burden of establishing a *prima facie* case by presenting evidence that (1) she belongs to a protected class (here, again, Plaintiff alleges race and sex discrimination), (2) she suffered an adverse employment action (*e.g.*, a loss of pay or overtime pay, a denial of a transfer, a denial of reimbursement), (3) her employer treated a similarly situated employee outside of her classification in a more favorable manner, and (4) she was qualified for the job in question (though this factor is immaterial for purposes of the current Motion). *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas Corp.*, 411 U.S. 792); *Lawyer v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 772-73 (11th Cir. 2008).

If the plaintiff makes such a showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). A defendant's burden is one of production, not persuasion, and is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994); *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983).

Here, Defendant contends Plaintiff cannot establish the second and third prongs of the *prima facie* showing. (Doc. # 28 at 9). Thus, whether Plaintiff has established a *prima facie* case

depends upon whether she has presented evidence that she suffered an adverse employment action and that a similarly situated employee was treated more favorably than her. *See Maynard*, 342 F.3d at 1289.

The court will address both of the contested prongs of the *prima facie* test, in turn. After careful review, the court concludes -- for purposes of her race and gender discrimination claims – that Plaintiff has established that she suffered an adverse employment action when she was denied a transfer, not paid for training coordinator duties, not reimbursed for training expenses, and not paid overtime. But, the court concludes that, as to each of her claims, she has not shown that a similarly situated employee in a different racial or gender category was treated more favorably than her.[12] Nor has she presented sufficient Rule 56 evidence that otherwise raises any inference of discrimination. Therefore, she has failed to make out a *prima facie* case of race and/or gender discrimination.

### 1. Plaintiff Has Shown that She Suffered an Adverse Employment Action

"Under the third element of the *prima facie* case, for conduct to qualify as an adverse employment action, the conduct must, in some substantial way, alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [ ] his or her status as an employee." *Powell v. Nat'l Labor Relations Bd.*, 2019 WL 4572915, at *4 (N.D. Ala. Sept. 20, 2019) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)) (internal quotation marks omitted). "To determine whether an employment action is 'adverse,' courts use an objective test: whether a reasonable person in the plaintiff's position would consider the employment action materially adverse." *James v. City of*

---

[12] Notably, with respect to her gender discrimination claim, Plaintiff has not even pointed to anyone who is an arguable comparator. That is, the Rule 56 record is completely void of any comparator evidence as to her claim of gender discrimination.

*Montgomery*, 2019 WL 3346530, at *7 (M.D. Ala. July 25, 2019); *see Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000), *overruled on other grounds by Cheatham v. Dekalb Cty., Ga.*, 682 F. App'x 881 (11th Cir. 2017) ("Whether an action is sufficient to constitute an adverse employment action . . . must be determined on a case-by-case basis.").

Here, Defendant asserts that all of Plaintiff's complained actions (which are discussed separately below) do not rise to the level of an actionable adverse employment action. (Doc. # 28 at 9). The court disagrees as to three of Plaintiff's complained actions, but it recognizes this is a close call.

### a. Reimbursement for Training Conference

Plaintiff first contends that being denied reimbursement for a training conference she attended was an actionable adverse employment action.[13] (Doc. # 29 at 25). The Eleventh Circuit has repeatedly held that "actions that affect compensation are considered adverse employment actions." *Gillis v. Ga. Dep't of Corrs.*, 400 F.3d 883, 887 (11th Cir. 2005). Although Defendant asserts Plaintiff was not entitled to reimbursement per se, the denial is an economic harm, which could be considered an adverse employment action. Simply stated, she was denied reimbursement (a privilege of her employment) for travel expenses she incurred to attend an employee training. *See Lockwood v. Coastal Health Dist. 9-1*, 2018 WL 715433, at *5 (S.D. Ga. Feb. 5, 2018) (noting that "[t]ermination and reimbursement denials both constitute an economic harm.").

### b. Compensation for Training Coordinator

Next, Plaintiff argues that not being compensated for her duties as a "Training

---

[13] Plaintiff also claims she suffered an adverse employment action by being issued a letter of counseling with respect to violating protocol in requesting time off for the training conference. With respect to the letter of counseling, Lieutenant Marable testified that "the [Birmingham Police Department] and the Personnel Board of Jefferson County do not consider a counseling to be discipline." (Doc. # 29 at 5). To be sure, the Rule 56 record is void of any suggestion that the terms of conditions of Plaintiff's employment changed as a result of this counseling. Therefore, the letter of counseling cannot be deemed an actionable adverse employment action.

Coordinator" for the months of November and December 2016 was an actionable adverse employment action by. Although again Defendant disputes Plaintiff's entitlement to the payment, this constitutes an adverse employment action because Plaintiff's compensation -- compensation she states she, and others, had received before -- was materially altered (*i.e.*, it was taken away). *See Gillis*, 400 F.3d at 887.

### c. Plaintiff's Transfer Request

Plaintiff believed that, based on her seniority, she should have been able to transfer to the day shift, but Defendant denied her that opportunity. Plaintiff argues that Defendant's denial of her transfer request to the day shift constitutes an actionable adverse employment action.[14] Defendant's denial of Plaintiff's transfer request does not constitute an actionable adverse employment action because it did not "serious[ly] or material[ly] change [] the terms, conditions, or privileges of [Plaintiff's] employment." *Dixon v. Palm Beach Cty. Parks and Recreation Dep't*, 343 F. App'x 500, 502 (11th Cir. 2009) (quoting *Davis*, 245 F.3d at 1239). *See id.* ("Although evidence showed [the plaintiff[ was . . . denied his requests for Sundays off[] and was transferred from the bicycle patrol unit, these were not adverse employment actions because they did not result in a serious and material change in the terms, conditions, and privileges of [his] employment.").

### d. Reduction in Overtime

Finally, Plaintiff argues that after she complained to Lieutenant Marable, her overtime hours were reduced, and that this constitutes an actionable adverse employment action. Defendant asserts that the Rule 56 record demonstrates that overtime hours are "dictated based on funding of

---

[14] In her affidavit, Plaintiff states that she was "involuntarily" transferred to the morning shift after her transfer request was denied. (Doc. # 31-1 at 3, ¶ 5). The record is unclear regarding precisely what Plaintiff's actual shift assignments were, and there is a dispute of fact about whether any changes were voluntary. However, because neither party argues in their briefing that any alleged involuntary transfer was an actionable adverse employment action, the court finds it unnecessary to address the issue.

overtime in the Police Department's budget and the needs of the Police Department." (Doc. # 29 at 7). However, Plaintiff has testified that her overtime hours were reduced. Viewing the facts in the light most favorable to the nonmoving party, Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the reduction in overtime hours is an adverse employment action. Such a reduction is a material change in the privileges of her employment. *See, e.g.*, *Hall*, 503 F. App'x at 788 ("Because overtime . . . opportunities affect[] compensation, a denial of such opportunities could constitute an adverse action."); *Fritz v. United Parcel Serv. Inc.*, 2016 WL 4565692, at *4 (D. Kan. Sept. 1, 2016) ("Although the plaintiff's evidence on [the issue of whether his overtime hours were reduced after his transfer] is perilously thin, . . . [the plaintiff] came forward with sufficient evidence to survive summary judgment.").

Therefore, after viewing all of the Rule 56 evidence it in the light most favorable to the nonmoving party, the court concludes that the denial of Plaintiff's transfer request is not an actionable adverse employment action, but Plaintiff has presented sufficient evidence that she suffered an adverse employment action with respect to her other three claims.

### 2. As to Each of Her Claims, Plaintiff Has Failed to Show that Someone in Outside Her Protected Class Who Was Similarly Situated to Her Was Treated More Favorably

After careful review, the court concludes that Plaintiff cannot establish a *prima facie* showing of race and/or gender discrimination because she has failed to present evidence that someone similarly situated to her was treated more favorably (or any other evidence that raises an inference of discrimination). With respect to Plaintiff's gender discrimination claim, Plaintiff proffers no comparator whatsoever. And, with respect to her race discrimination claim, Plaintiff's proffered comparator, George Joiner, is not an appropriate comparator.

Under *McDonnell Douglas*, an employee identified as a comparator by a Title VII plaintiff

must be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc). The Eleventh Circuit has clarified how one can meet this standard: A plaintiff must establish that the comparator (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) "will have been subject to the same employment policy, guidelines, or rule as the plaintiff;" (3) "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff;" and (4) "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28. "A valid comparison will turn not on formal labels, but rather on substantive likenesses. . . . [A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1355 (2015)). Indeed, "[w]hether a comparator is similar in 'all material respects' is determined on a case-by-case basis, considering the individual circumstances in each case." *Lewis*, 918 F.3d at 1224.

Beginning with her transfer claim, Plaintiff asserts that Joiner received the shift transfer she requested. Joiner, however, is not an appropriate comparator under *Lewis*. To be sure, each comparator is evaluated on a case-by-case basis. In this case, even viewing the facts in the light most favorable to Plaintiff, Joiner does not fit the bill. First, Joiner and Plaintiff did not engage in the same conduct (*i.e.*, they did not request a transfer at the same time or for the same reasons). (Doc. # 29 at 25). Joiner suffered from a terminal illness and submitted an FMLA request to be placed on the day shift so that he could attend his doctor's appointments. This request was approved as an accommodation. Plaintiff never submitted an FMLA request. The Rule 56 record suggests that Plaintiff merely informally spoke to Lieutenant Marable about transferring shifts and changing her off days. Second, Joiner and Plaintiff do not share the same employment history. While Joiner and Plaintiff were both PSD IIIs before Joiner passed away, he worked under an

"intermittent" FMLA plan for approximately four months before taking a leave of absence due to his terminal illness. (Doc. # 29 at 7). There is nothing in the record indicating that Plaintiff worked intermittently. Thus, while it is true that Plaintiff and Joiner worked under the same supervisors and were subject to the same policies, guidelines, and rules, there are other undisputed facts that show Joiner is not an appropriate comparator.

As to her claims of being denied reimbursement, being denied compensation for training coordinator duties, and being denied overtime, Plaintiff proffers no comparator evidence whatsoever. Nor has she pointed to anything in the summary judgment record suggesting race or gender was a factor in any of these denials. As to each of these claims, Plaintiff seems to challenge only the fairness of Defendant's decisions. But, it is not for the court to assess questions of fairness. The Eleventh Circuit has held that "[t]he role of [the federal court] 'is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.' 'Our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d a1079, 1092 (quoting *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) and *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)); *see Knight v. Fourteen D. Enters., Inc.*, 995 F. Supp. 2d 1311, 1331-32 ("Title VII is not a shield against harsh treatment at the workplace. Nor does the statute require the employer to have good cause for its decisions.").

Finally, with respect to Plaintiff's overtime claim, as noted above, the Rule 56 record contains an excel spreadsheet that illustrates that out of the 13 employees listed, Plaintiff had accrued the fifth highest number of overtime hours from January 2016 to August 2019—a total of 1,604.55 hours. (Doc. # 29 at 31). Interestingly, Carol Bryant, one of the employees Plaintiff testified was taking her overtime hours (*see* Doc. # 31-1 at 2, ¶ 7), had accrued only 920.71 total

hours of overtime between January 2016 and August 2019. (*Id.*). Although this chart covers a broad timeframe, it is the only substantial evidence in the record as to any overtime comparisons between employees. So, while it does not break down the overtime hours worked on a week-by-week basis, it does highlight the total amount of overtime hours each employee received. And, it is the only comparison data in the Rule 56 record.

This Rule 56 evidence, while limited in value because it looks at a three-year period, cuts against Plaintiff's discrimination claims (based on a reduction in overtime hours). The parties have not submitted any further evidence about the amount of overtime actually worked. Furthermore, Plaintiff's assertion that her overtime hours were redistributed to Carol Bryant (a female) who received significantly less overtime hours than Plaintiff and Vicki Young (also female) undermines her gender discrimination claim.

Because Plaintiff has failed to present any proper comparator evidence, her *prima facie* case necessarily fails. But even if Plaintiff could establish that someone similarly situated to her was treated more favorably (which, to be clear, she has not), her claims would still fail because, as explained below, she cannot establish that Defendant's reasons for transferring Joiner instead of Plaintiff are a pretext for discrimination.

### 3. Plaintiff Has Failed to Show that Defendant's Proffered Legitimate, Non-discriminatory Reasons are a Pretext for Discrimination

Even if Plaintiff had established a *prima facie* case of race or gender discrimination (and, to be clear, she has not), Defendant would still be entitled to summary judgment on Plaintiff's race and gender discrimination claims. Under the *McDonnell-Douglas* framework, once a *prima facie* case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason" for the actions taken against the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254

(1981). If the defendant can produce a non-discriminatory reason for the plaintiff's treatment, the plaintiff must then show that the proffered reason was merely a pretext, and that the defendant's real intent was discriminatory.

Defendant has easily met its burden of articulating legitimate, non-discriminatory reasons for failing to reimburse Plaintiff for training in or around August 2016; failing to compensate Plaintiff for being a "training coordinator" for the months of November 2016 and December 2016; allowing Joiner to transfer to the day shift and giving him weekends and holidays off but denying Plaintiff such opportunity; and decreasing her overtime hours.

As to the reimbursement, the undisputed evidence shows that Plaintiff was aware of the relevant chain of command to request time off, but failed to follow the proper protocol. Sergeant Johnson stated that the chain of command was established in staff meetings held on June 24, 2014 and November 7, 2014, and Plaintiff had attended at least one of those meetings. (Doc. # 29 at 26). Plaintiff's conclusory assertion that she was unaware of the protocol is insufficient to create a genuine question of fact on this issue. Defendant also points out that Plaintiff "had already attended two other training classes and [Lieutenant] Marable . . . was trying to give everyone the opportunity to attend one of the trainings. That's when [Plaintiff] stated she was already on vacation and would pay for the training herself." (Doc. # 29 at 26). Plaintiff does not contest these facts. (*Id.* at 16). Simply stated, Plaintiff has not shown she was entitled to reimbursement.

With respect to the compensation for acting as a training coordinator, Defendant has explained that "the training increase [the PSD IIIs] were giving themselves . . . was stopped because they could not do that. . . . [The PSD IIIs] were already getting their pay increase from being supervisors and they could not get any type of training pay." (Doc. # 29 at 25). Because this was an unauthorized practice, Plaintiff was not entitled to the payment. And, because the correction

occurred with respect to all PSD IIIs, Plaintiff was not singled out.

Next, as to the denial of Plaintiff's transfer request, Defendant was required to accommodate Joiner due to his illness under the FMLA and transferring him to the day shift was an appropriate accommodation. The day shift also only had one PSD III position because a Sergeant was also on duty during the day shift. Therefore, Defendant did not have an available day shift position to give Plaintiff.

Finally, as to the reduction in overtime hours, Defendant asserts that overtime hours are "dictated based on funding of overtime in the Police Department's budget and the needs of the Police Department." (Doc. # 29 at 7). Therefore, it is not a pick-and-choose-type system; rather, overtime is offered when and if the Department has a need for it. Plaintiff's general conclusory statement to the contrary (*i.e.*, that her overtime hours were reduced), is insufficient to create a genuine issue of fact based on the entirety of the Rule 56 record. At best the record raises questions about whether the distribution of overtime was fair, not whether it was discriminatory. For example, questions were raised about whether overtime sheets were distributed to Plaintiff and others *after* others had the opportunity to sign up for overtime slots. (Doc. # 29 at 17, 22).

Thus, Defendant has met its burden of articulating legitimate, non-discriminatory reasons for every action. "[T]he burden [then] shifts back to [Plaintiff] to "meet [these proffered] reason[s] head on and rebut [them]." *Melton*, 705 F. Supp. 2d at 1320 (quoting *Chapman*, 229 F.3d at 1030). Plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F. 3d at 1030.

Here, Plaintiff has failed to present evidence that Defendant's articulated reasons for the complained-of actions are pretextual. Again, the court is not positioned to second-guess those decisions without sufficient evidence rebutting them—evidence which is lacking in this Rule 56

record. *See Flowers v. Troup Cty, Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Title VII does not allow federal courts to second-guess non-discriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges.'" (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010))).

### 4. Plaintiff Has Otherwise Failed to Raise a Sufficient Inference of Discrimination Through Circumstantial Evidence

Finally, the court concludes that Plaintiff has failed to raise any inference of discrimination on the part of Defendant through circumstantial or other evidence. After reviewing the entirety of the Rule 56 record, the court cannot discern any question for a jury to decide related to Plaintiff's claim of race or gender discrimination. As to Plaintiff's gender discrimination claim, there is simply no Rule 56 evidence indicating a gender-based animus on the part of Defendant. As to her race discrimination claim, Plaintiff has not proffered comparator evidence, and there is nothing in the record suggesting that Defendant took Plaintiff's race into account when making any of the challenged decisions.

### B. Plaintiff's Retaliation Claim

After careful review of the Rule 56 record, viewing the facts in the light most favorable to the nonmoving party, the court concludes that Plaintiff has failed to establish a *prima facie* case of retaliation under both Title VII and § 1981.[15]

Title VII and § 1981 prohibit retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

---

[15] Section 1981 does not permit assertion of a gender-based retaliation claim. *See Rollins v. Ala. Cmty. Coll. Sys.*, 814 F. Supp. 2d 1250, 1268 (M.D. Ala. 2001) ("Only claims of race discrimination, and not claims of gender discrimination, are cognizable under § 1981." (quoting *Runyon v. McCrary*, 427 U.S. 160, 167 (1976))). Thus, the court has only assessed Plaintiff's § 1981 retaliation claim in the context of her race discrimination complaint.

hearing." 42 U.S.C. § 2000e–3(a). "[T]he protection afforded by [Title VII] is not limited to individuals who have filed formal complaints[] but extends as well to those . . . who informally voice complaints to their superiors" under the opposition clause. *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x. 747, 753 (11th Cir. 2017) (citing *Rollins v. State of Fla. Dep't. of Law Enforcement.*, 868 F.2d 397, 400 (11th Cir. 1989)).

"A *prima facie* case of retaliation under Title VII [and § 1981] requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). "If a plaintiff establishes a *prima facie* case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011) (citing *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

Defendant contends that Plaintiff has failed to establish any of the three elements listed above, and her retaliation claim necessarily fails. The court disagrees as to the first two elements, but it agrees as to the last element.

### 1. Plaintiff Has Presented Sufficient Evidence that She Engaged in An Activity Protected Under Title VII

A Title VII and/or § 1981 plaintiff may allege a retaliation claim under the "participation" clause or the "opposition" clause:

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3 (a). . . . [U]nder the participation

clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). Here, Plaintiff's claim cannot rest on the participation clause because she "participated" (*i.e.*, filed her EEOC charge) on February 2, 2017, well after the adverse employment action she complains about. (Doc. # 8-1 at 2). Because no part of Plaintiff's retaliation claim rests on activity that occurred after she filed her EEOC Charge, the participation clause offers no support. Properly understood, Plaintiff's retaliation claim is based upon the "opposition" clause. She asserts that after she complained about Joiner's transfer, Defendant retaliated against her by decreasing her overtime hours.[16] (Doc. # 31 at 6).

Plaintiff complained to Lieutenant Marable that she believed race and sex were factors in Joiner (rather than her) being transferred to the day shift. In order for Plaintiff's complaints to be considered protected activity, "she must show both that she believed in good faith that her employer was 'engaged in unlawful employment practices,' and that her 'belief was *objectively* reasonable in light of the facts and record presented.'" *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 898 (11th Cir. 2011) (quoting *Little v. United Tech. Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)); *see Saffold v. Special Counsel, Inc.*, 147 F. App'x 949, 951 (11th Cir. 2005). "It . . . is not enough for a plaintiff to allege that [her] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was *objectively* reasonable." *Allen v. S. Commc'ns. Servs., Inc.*, 963 F. Supp. 2d 1242, 1251 (N.D. Ala. 2013) (emphasis added).

---

[16] Plaintiff filed her EEOC charge on February 2, 2017. (Doc. # 8-1 at 2). However, no part of Plaintiff's retaliation claim rests on activity that occurred after she filed her EEOC Charge. It is apparent from the record that what Plaintiff complains of occurred before she filed her Charge.

In her Affidavit, Plaintiff testified that at the time she complained to Lieutenant Marable about Joiner's transfer, she informed him that she believed "granting the transfer to Joiner was discrimination based on race and gender." (Doc. # 31-1 at 3, ¶ 6). Because of her seniority (which lead Plaintiff to believe she could be placed on the day shift) and because she states she was unaware of Joiner's illness at the time she complained to Lieutenant Marable, a reasonable jury could find that Plaintiff reasonably believed that her race and gender were considered when her transfer request was denied.[17]

Therefore, Plaintiff has shown that she engaged in "protected conduct."

### 2. Plaintiff Has Presented Sufficient Evidence that She Suffered an Adverse Employment Action

Next, in order to establish a *prima facie* claim of retaliation, Plaintiff is required to show that she suffered an adverse employment action. The standard for what constitutes an adverse employment action in the retaliation context differs from the standard applied in the discrimination context. *See Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "In order to constitute an adverse employment action for purposes of establishing a *prima facie* case under Title VII's anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.*, 315 F. App'x 798, (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57). "Whether an employment action qualifies as adverse depends upon the circumstances of the particular case[] and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Mills v. Cellco P'ship*, 376 F.

---

[17] The court understands that Lieutenant Marable testified that he does not recall Plaintiff complaining to him about Joiner's transfer. (Doc. # 29 at 7). But this is a disputed issue of fact for a jury to resolve, not the court.

Supp. 3d 1228, 1244 (N.D. Ala. 2019) (quotation omitted) (internal quotation marks omitted).

Here, Plaintiff has alleged that the decrease in her overtime hours after she complained to Lieutenant Marable was an actionable adverse employment action. The court agrees that a reasonable employee could be dissuaded from complaining about a matter they believe to be discriminatory due to a fear of losing overtime hours. *See also L'Argent v. United Space Alliance, LLC*, 2006 WL 680806, at *9 (M.D. Fla. March 16, 2006) (concluding that the plaintiff established she suffered an adverse employment action after detailing the "difference in the hours of overtime she could have worked and the amount of money she could have made" had she not been transferred to another station).

Therefore, Plaintiff has presented sufficient evidence that she suffered an adverse employment action.

### 3. Plaintiff Has Failed to Show Any Causal Link

Finally, Plaintiff is required to show that the challenged employment action was causally related to the protected conduct.

> A plaintiff can establish causation by showing a close temporal proximity between the statutorily protected activity and the adverse action, "[b]ut mere temporal proximity, without more, must be very close." Accordingly, when a plaintiff relies on temporal proximity alone to show causation, "if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." A three to fourth month gap is insufficiently proximate to establish causation.

*Hall*, 503 F. App'x at 789 (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). Construing the facts in the light most favorable to Plaintiff, the court concludes that Plaintiff has not presented sufficient evidence to show that her complaints to Lieutenant Marable were causally related to a reduction in her overtime hours. Plaintiff stated she believed the overtime distribution was "unfair" from September to November 2016, because "[o]ther shifts were given

first choice and by the time the morning shift received the list most of the days were taken." (Doc. # 29 at 17). But, the Rule 56 record indicates that she did not complain to Lieutenant Marable until October 2016. Thus, the undisputed evidence is that Plaintiff's overtime hours were being reduced before she made her complaint. Moreover, the record shows that the overtime of others who worked on her same shift (and who did not complain) were also reduced. Thus, the reduction in Plaintiff's overtime hours cannot be attributed to her protected conduct, and it cannot serve as a basis for her retaliation claim.

Plaintiff has not presented evidence establishing a *prima facie* case of retaliation.

### 4. Plaintiff Has Failed to Show that Defendant's Articulated Non-discriminatory Reasons are a Pretext for Retaliation

Even if Plaintiff had presented a *prima facie* case of retaliation (which she has not), Defendant has sufficiently "proffered a legitimate, non-discriminatory [and non-retaliatory] reason for the adverse employment action." *Watson*, 430 F. App'x at 791. As discussed above with respect to Plaintiff's race and gender discrimination claims, Defendant has proffered non-discriminatory and non-retaliatory reasons why Plaintiff may have received less overtime. Specifically, Defendant explained that overtime hours are "dictated based on funding of overtime in the Police Department's budget and the needs of the Police Department." (Doc. # 29 at 7). Lieutenant Marable also stated that Plaintiff has never been denied the opportunity to work overtime on the weekends. (*Id.* at 25). Therefore, the burden shifts back to Plaintiff to "meet the employer's reason[s] 'head on and rebut [them].'" *Watson*, 430 F. App'x at 791 (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

"A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation omitted) (internal quotation marks omitted). Here, Plaintiff

has not shown that Defendant's reason for decreasing her overtime hours was false and that retaliation was its real motivation. First, outside of Plaintiff's overly general assertions, there is no Rule 56 evidence showing that Defendant did in fact decrease Plaintiff's overtime hours. Second, according to the Rule 56 evidence, any reduction started prior to her complaints. Additionally, there is no Rule 56 evidence indicating that Defendant intentionally retaliated against Plaintiff by only reduced the amount of overtime hours Plaintiff received. *See Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of discrimination [or retaliation], without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.").

Because Plaintiff has not shown that Defendant's reasons were pretextual, her claim of retaliation necessarily fails.

## IV. Conclusion

For the reasons explained above, Defendant's Motion for Summary Judgment (*see* Doc. # 27) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 10, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE